IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| DELISIA DEGRAFFREED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:24-cv-02230-SHL-atc |
| ) | |
| CITY OF MEMPHIS, ) | |
| ) | |
| Defendant. ) | |

**ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are two motions.  The first is Defendant City of Memphis' Motion for Summary Judgment (ECF No. 96), filed April 4, 2025.  Plaintiff Delisia Degraffreed[1] responded on May 2 (ECF No. 119), and Defendant replied on May 16 (ECF No. 128).  The second is Plaintiff's Motion for Partial Summary Judgment Against Defendant (ECF No. 99), also filed April 4.  Defendant responded on May 2 (ECF No. 118) and Plaintiff replied on May 16 (ECF No. 126).

Both parties seek summary judgment on Plaintiff's claim for Family Medical Leave Act ("FMLA") interference.  Defendant argues that Plaintiff was not deprived of any properly requested FMLA leave, for all of the leave for which she provided sufficient information and was entitled to receive was approved.  (ECF No. 108 at PageID 1564–66.)  It asserts that Plaintiff was denied some leave because she submitted incomplete paperwork and, despite notice of the errors, she failed to provide timely corrections.  (Id. at PageID 1565–66.)  Plaintiff contends that she provided sufficient material, Defendant's employee failed to properly forward her

---

[1] The spelling of Plaintiff's first name is not consistent throughout the filings.  The Court spells her first name as reflected on the docket.

documentation to Defendant's third-party administrator, and she was never told that she needed to provide additional information. (ECF No. 119 at PageID 2008–12.) In essence, this dispute centers on whether Plaintiff provided sufficient information to justify her leave and, if she did not, who is at fault.

For the reasons discussed below, both motions are **DENIED**.[2]

## BACKGROUND[3]

I.  **Initial Communications and Actions Regarding Plaintiff's FMLA Leave Request**

Plaintiff began working for Defendant in 2009 and became the Finance and Payroll Administrator for Defendant's Solid Waste Division in January 2023. (ECF Nos. 99-3 at ¶ 4, 104 at ¶ 2.) Between August and October 2023, she sought to exercise her right to FMLA leave. During this time period, the Standard was Defendant's third-party administrator and facilitated requests for FMLA leave. (ECF No. 129 at ¶¶ 14, 16.)

On August 28, Plaintiff texted her supervisor, Deputy Darius Jones, and several others that she was waiting to see her doctor, would be asking to take the rest of the week off, and would be in touch if the doctor declined her request. (ECF No. 120 at ¶¶ 8–9.) After Plaintiff was seen by Humphrey's Family Practice Clinic on August 30, one of her medical providers wrote that Plaintiff "needs a medical absence" from that day through September 4. (ECF Nos. 129 at ¶ 24; 118-1 at ¶ 47.)

---

[2] Defendant also moves for summary judgment on Plaintiff's FMLA retaliation claim. (ECF No. 96 at PageID 613.) Because that claim was subsequently dismissed (ECF No. 130), that portion of Defendant's motion is **DENIED AS MOOT**.

[3] These facts are undisputed, unless otherwise noted. Pursuant to a prior Court order, "facts" related to documents received after the discovery deadline will not be considered. (See ECF No. 132 at PageID 2769.)

Under Defendant's Sick Leave Policy, employees who miss more than three consecutive days of work are required to apply for FMLA leave. (See ECF No. 127 at ¶ 57.) In addition, "[o]nce an employee's supervisor, manager, or director becomes aware that an employee's need for leave is for a reason that may qualify under FMLA, [Defendant] must notify the employee if he or she is eligible for FMLA leave." (ECF No. 129 at ¶ 11.) When seeking FMLA leave, employees must comply with the Standard's deadlines and submit documentation to the third-party administrator. (Id. at ¶ 8.) Under Defendant's policy, when an employee requires FMLA leave, she can notify the Standard, her human resources business partner, or a human resources liaison in her division. (Id. at ¶ 6.)

Here, Plaintiff emailed doctor's notes[4] to Jones, who forwarded them to Richard Snodgrass, the Senior Human Resources Business Partner of the Solid Waste Division. (ECF Nos. 118-1 at ¶ 8; 129 at ¶ 22.) Snodgrass was the Division's most senior human resources employee. (ECF No. 118-1 at ¶ 10.)

On September 5, after receiving a referral, Plaintiff presented to Crestwyn Behavioral Health and was prescribed intensive outpatient therapy. (ECF Nos. 99-1 at PageID 903 (providing name of entity), 129 at ¶ 25.) Plaintiff copied Jones on an email that day, indicating that she would need to be out of work for "Intensive Outpatient" from 8:30 a.m. to 12:00 p.m., Monday through Friday. (ECF No. 104 at ¶ 12.) She indicated that she would be at work on September 6 and 7 "before taking FMLA." (Id.) The parties agree that Plaintiff's September 5 email did not indicate a need for continuous leave, defined in policy as "a block of FMLA leave

---

[4] The parties dispute if Plaintiff provided "medical documentation" specifically, for Jones said during his deposition that he had received "pretty much some doctor's notes." (ECF No. 129 at ¶ 22.) Plaintiff argues that she had submitted the August 30 letter from one of her providers at Humphrey's Family Practice Clinic. (See ECF No. 120 at ¶ 12.)

3

taken for a continuous period of time and not broken up by a period of work." (ECF Nos. 120 at ¶ 12; 129 at ¶ 5.)

Snodgrass initiated Plaintiff's FMLA request on or about September 5.[5] (Id. at ¶¶ 13–14.) When the Standard receives an FMLA leave request, it communicates with the employee's supervisor about the status of the leave request. (ECF No. 129 at ¶ 19.) The Human Resources Business Partner within the division where the employee works, the employee's direct manager, and Defendant's leave of absence office receive updates regarding leave requests. (ECF No. 118-1 at ¶ 29.) Upon receiving medical documentation and certification related to FMLA requests for Solid Waste Division employees, Snodgrass is responsible for ensuring that Defendant's leave coordinator has the paperwork.[6] (See id. at ¶ 42.) According to Defendant, the Standard emailed Jones on September 5 about a "New Continuous LOA Absence Request," with Plaintiff's FMLA status marked as "[p]ending."[7] (ECF No. 104 at ¶ 15.)

On or about September 5 or 6, Plaintiff advised Snodgrass that the dates in his FMLA request on her behalf were incorrect. (ECF No. 118-1 at ¶ 63.) On September 6, the Standard issued Plaintiff a letter informing her that she met the FMLA eligibility requirements and indicating that the leave requested was from August 25 through September 15. (ECF No. 120 at

---

[5] The parties dispute if Snodgrass's request was for "continuous" leave. (ECF No. 120 at ¶ 14.) During her deposition, Plaintiff stated that Snodgrass "submitted a request for intermittent leave and short-term disability on [her] behalf." (ECF No. 97-1 at PageID 677.)

[6] Plaintiff argues that it was Snodgrass's responsibility to forward medical documentation and certifications to the leave coordinator specifically, which Defendant disputes. (ECF No. 118-1 at ¶ 42.) Based on the testimony from her deposition as Defendant's Rule 30(b)(6) representative, Ashleigh Brock worked for the leave department as a leave coordinator in September and October 2023. (ECF No. 108-1 at PageID 1577, 1584.)

[7] Plaintiff disputes this statement as unsupported by an evidentiary citation (ECF No. 120 at ¶ 15); however, it comes directly from the document Defendant cites, which includes the email Jones forwarded to Snodgrass (see id.; ECF No. 98-2 at PageID 815).

4

¶ 17.) Afterward, Plaintiff contacted the Standard and provided corrected dates for her FMLA leave. (Id. at ¶ 18.)

On September 8, the Standard sent Jones an email update, indicating that Plaintiff's requested leave started on August 28 and would end on September 25. (ECF No. 120 at ¶ 19.) The email stated that Plaintiff's request was for "[i]ntermittent" leave, defined as "leave taken in separate blocks of time due to a single qualifying reason." (Id.; (ECF No. 129 at ¶ 5.) However, "Plaintiff disputes any assertion, suggestion, or intimation that she ever communicated to the Standard or [Defendant] that she needed "intermittent leave," as opposed to just "FMLA leave[.]" (ECF No. 120 at ¶ 19.)

On September 12, Plaintiff emailed Jones and attached a medical note from Crestwyn, which stated that she was admitted to Crestwyn Behavioral Health's Intensive Outpatient Program on September 8 and had an estimated discharge date of October 4. (ECF No. 120 at ¶¶ 20–21.) The note stated that Plaintiff's weekly treatment was Monday through Friday from 8:30 a.m. until 12:00 p.m. (Id. at ¶ 21.) In the email, Plaintiff wrote that "[t]his is a statement that will be used to justify my daily leave until the FMLA documents are completed." (Id. at ¶ 20.)

Plaintiff testified in her deposition that, on September 19, Jones texted her, saying that he had not heard from her and asking her to call him. (ECF No. 97-1 at PageID 671.) Jones also texted her on September 21, to ask how she was doing. (Id.) Plaintiff did not respond to either message. (Id.)

II.     **The Certification**

Under Defendant's policy, "[i]f the employee refuses to return FMLA paperwork and the City has enough information to determine that the leave is taken for a qualify FMLA reason, the

5

City shall designate the leave as FMLA."[8]  (ECF No. 129 at ¶ 9.)  However, the employee must have submitted proper documentation for Defendant to determine that the leave should be designated as FMLA leave.  (Id. at ¶ 10.)

On September 27, Crestwyn faxed the Standard a Certification of Healthcare Provider for Employee's Serious Health Condition form ("Certification") on Plaintiff's behalf.  (ECF Nos. 118-1 at ¶ 45, 127 at ¶ 66.)  The Certification identified Plaintiff's requested leave dates as September 8 through October 12.  (ECF No. 127 at ¶ 66.)  Plaintiff's physician also provided an estimated treatment schedule of "[Monday to Friday], [8:00 a.m. to 12:00 p.m.] per outside provider recommendation."  (Id. at ¶ 68.)

In the Certification, Plaintiff's physician responded "yes" to questions "[w]ill the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions," and "[i]s it medically necessary for the employee to be absent from work during the flare-ups."  (Id.)  However, the section seeking more information about the "frequency" and "duration" of those flare-ups was left blank.  (Id.)

On September 28, the Standard sent a letter addressed to Plaintiff, which Plaintiff asserts, and Defendant disputes, she had not seen until discovery.  (ECF Nos. 120 at ¶ 24; 118 at PageID 1851–52.)  The letter read:

> We are writing concerning your leave request with Standard Insurance Company (The Standard), administrator of the leave program for City of Memphis.
>
> The information we received is incomplete or insufficient for the following reason:

---

[8] When asked at his deposition about his interpretation of the policy, Snodgrass clarified that the "key [to interpreting this policy] is if the City has enough information to make a certification determination."  (ECF No. 98-1 at PageID 790.)  Defendant's corporate representative testified similarly, stating that "if [Defendant] receives enough information to make a determination that FMLA is qualifying, it should be designated as FMLA leave."  (ECF No. 118-1 at ¶ 19).  She also stated "the employee would need to submit the proper documentation for [Defendant] to make that decision."  (Id.)

> - Missing Frequency and Duration
>
> Enclosed is a new copy of the certification form. Have your provider clarify the sections noted to be incomplete sections.
>
> Return the complete form to us by 10/5/2023 so we can finish reviewing your leave.
>
> If you do not return this form by 10/5/2023 we may deny your request for leave and your time away from work may not be job protected under the applicable leave laws and/or policies. This may impact your employment status.
>
> **Remember that it is your responsibility to make sure the information requested is submitted on time.**
>
> If you need assistance in getting information from your provider, we may be able to assist you by contacting them.
>
> Enclosed is an Authorization form to allow us to obtain the necessary information to certify your leave. Complete and return this form if you would like our assistance.
>
> Standard Insurance Company
> P.O. Box 3877
> Portland, OR 97208
> Fax: 866.751.5174
>
> If you have any questions call our office at the number below. Have your employer name and your leave number on hand (as listed above).[9]

(ECF No. 99-5 at PageID 990 (emphasis in original).) The same day, Snodgrass emailed

Plaintiff:

> It was good to see you yesterday, hope you're doing well. Mr. Jones showed me the doctor's statement from Crestwyn yesterday indicating you would need FMLA leave Monday [through] Friday from [8:30 a.m. to 12:00 p.m.], for the period of [September 8 to October 4, 2023]. This certainly qualifies as FMLA, but according to Standard and Ms. Brock [Defendant's leave coordinator] they have no record of you returning the FMLA documentation as required by policy. Please follow up with Crestwyn and ensure they complete the FMLA paperwork and return it to Standard. Standard can be reached at 833-878-9034 if you need to speak with them. I know from an earlier discussion we had RE: FMLA, it is to protect you, even if you have a lot of Sick Leave available. We just need to make sure we are compliant

---

[9] The full document was produced during discovery. (See ECF No. 99-5 at PageID 990–91.)

with City of Memphis Policies.  Thanks in advance for your cooperation in this matter.  Take care.[10]

(ECF No. 120 at ¶ 25.)  Plaintiff emailed Snodgrass on September 29, stating that "[t]he documents were sent by Crestwyn again and they provided [her] with the fax cover sheet which [she has] attached."[11]  (ECF No. 118-1 at ¶ 38.)

In a letter dated September 29 and addressed to Plaintiff, the Standard wrote:

We are writing concerning your leave request with Standard Insurance Company (The Standard), administrator of the leave program for City of Memphis.

Your request for leave was received on 9/8/2023.

We still have not received all of the information we requested.  To allow us to begin reviewing your claim, please complete and return the following:

**Documentation Needed: Certification of Health Care Provider for Employee's Serious Health Condition form**

If you believe this information was sent, contact us immediately.  Otherwise, complete and return the required documentation by the due date below.

Receipt of this information will ensure your time away is job protected under the applicable leave laws and/or policies and not denied due to lack of information.

Fax or mail the requested information to us at:

Standard Insurance Company
P.O. Box 3877
Portland, OR 97208
Fax: 866.751.5174

---

[10] Defendant argues that this email confuses Snodgrass's role in determining Plaintiff's FMLA leave and that it "reserves the ability to seek to strike pursuant to Fed. R. Evid. 801, 803, 401, and 403."  (ECF No. 129 at ¶ 27; see also ECF No. 118 at PageID 1854.)  However, the relevance here outweighs any prejudice and, absent additional arguments, there appears to be no reason to exclude consideration of the email.

[11] Defendant does not dispute that Snodgrass received an email on September 29 from Plaintiff.  (ECF No. 129 at ¶ 30.)  However, if Plaintiff relies on the statement to prove that she sent the Certification to the Standard on September 27, then Defendant seeks to strike the content of Plaintiff's email as impermissible hearsay.  (Id.)

> We are extending your due date to 10/5/2023 because we have not received your completed documentation.
>
> For job protection under applicable leave laws and/or policies, you must provide certification documenting your need for leave.
>
> If we do not receive this information by 10/5/2023, your leave request will be denied and your leave will not be job protected under the applicable leave laws and/or policies.  This may impact your employment status.
>
> Contact us if you have questions or if the provider cannot provide documentation by the due date.
>
> If you have any questions call our office at the number below.  Have your employer name and your leave number on hand (as listed above) [12]

(ECF Nos. 99-5 at PageID 980 (emphasis in original); see also ECF No. 129 at ¶ 29 (emphasis in original).)  Plaintiff contends that she did not receive this letter before the lawsuit was filed and that she was not otherwise advised of the October 5 deadline.  (See id.)  She states, and Defendant disputes, that "[a]t no time did [she] receive any communication from any person associated with [Defendant] or the Standard that her Certification was inadequate or any additional information was needed or required."  (ECF No. 118-1 at ¶ 46.)

On October 11, Defendant notified Plaintiff that her request for FMLA had been denied, and she was required to work full duty with no restrictions on October 13.  (ECF No. 120 at ¶ 29.)  During her Rule 30(b)(6) deposition, Defendant's corporate representative testified that ultimately "the Standard denied her FMLA request due to a lack of certification and informed the City of Memphis."  (Id. at ¶ 26.)  On October 12, Snodgrass received an email from one of Defendant's employees, which read "FYI – Ms. DeGraffreed FMLA paperwork was emailed

---

[12] The full document was produced during discovery.  (See ECF No. 99-5 at PageID 980–81.)

9

over to the Standard."[13]  (ECF No. 118-1 at ¶ 40.)  According to Plaintiff, the Certification was attached to the October 12 email to Snodgrass, and the attachment specified that:

- Plaintiff's medical condition commenced on September 8;
- The probable duration (end) of Plaintiff's medical condition was October 12;
- Plaintiff needed medical leave from September 8 through October 12; and
- Plaintiff's estimated treatment schedule was Monday – Friday from 8:00 a.m. through 12:00 p.m.

(Id. at ¶ 41.)

### III.    Suspension Letter and Lawsuit

On October 16, Defendant notified Plaintiff that she violated its policies because of her unauthorized sick leave from August 28 through October 12 and that a fact-finding hearing would be held on October 17.  (ECF No. 104 at ¶ 30.)  During the hearing, Plaintiff stated that she did not need "continuous" FMLA leave, for her treatment program did not require her to be completely absent from work.  (ECF No. 120 at ¶ 32.)  She instead required a "reduced schedule," which, under Defendant's FMLA policy, involves "reducing the employee's usual daily or weekly work schedule."  (Id.; ECF No. 129 at ¶ 5.)

On October 27, Defendant wrote to Plaintiff that she violated its FMLA policy and had taken leave that did not qualify under FMLA.  (ECF No. 118-1 at ¶ 49.)  Plaintiff was told:

> During the dates of August 28, 2023 through October 12, 2023, you were out of office on unauthorized sick leave.  You failed to properly notify your manager of your leave request.  You have violated the same policies that you are responsible for managing and monitoring. […]Additionally, this conduct is unbecoming of a Solid Waste division leader.  Based on the violation(s), it has been decided that you will be suspended for five (5) business days without pay, effective Monday,

---

[13] Although Defendant does not dispute that Snodgrass received the email, Defendant moves to strike the email's contents as impermissible hearsay (ECF No. 118-1 at ¶ 40.)  It argues that Snodgrass failed to authenticate the email during his deposition.  (ECF No. 118 at PageID 1853–54.)  However, during his deposition, Snodgrass remembered receiving the email but stated that he did not open the attachments, and he did not recall forwarding the email to anyone.  (ECF No. 126-3 at PageID 2623–24.)  He also recognized the sender as an employee who worked for Plaintiff.  (ECF No. 98-1 at PageID 798.)  Additionally, the email was sent by one of Defendant's employees in her work capacity.  (See id.)

October 30, 2023 – Friday, November 3, 2023.  This is also a final warning.  Any continuation of the unacceptable practice must cease or the result may lead to additional discipline up to and including termination.

(ECF No. 118-1 at ¶ 50.)

At issue is whether Defendant interfered with Plaintiff's FMLA rights.

## **STANDARD OF REVIEW**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if "proof of that fact would establish or refute an essential element of the cause of action or defense."  Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012) (citing Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)).  The Court views facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once a properly supported motion for summary judgment has been made, the party opposing summary judgment must show that there is a genuine dispute of material fact by pointing to evidence in the record, or argue that the moving party is not entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c)(1).  A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Although the court views all evidence and factual inferences in the light most favorable to the non-moving party, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. at 247–48 (emphasis in original).  The

11

court's role is not to weigh evidence or assess the credibility of witnesses, but simply to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Kroll v. White Lake Ambulance Auth., 763 F.3d 619, 623 (6th Cir. 2014) (quoting Anderson, 477 U.S. at 251–52) (internal quotation marks omitted).

## ANALYSIS

The FMLA allows eligible employees to take up to twelve weeks of leave during any twelve month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position[.]" 29 U.S.C. § 2612(a)(1)(D). If an employer denies FMLA benefits that an employee is entitled to, the action constitutes FMLA interference. Demyanovich v. Cadon Plating & Coatings, L.L.C., 747 F.3d 419, 427 (6th Cir. 2014); 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter [for FMLA].") To bring a prima facie FMLA interference claim, a plaintiff must demonstrate that

> (1) she was an eligible employee; (2) [the defendant] was a covered employer; (3) she was entitled to take leave under the FMLA; (4) she notified [the defendant] she intended to take leave; and (5) [the defendant] denied her rights or benefits to which she was entitled under the statute."[14]

Chapman v. Brentlinger Enters., 124 F.4th 382, 390 (6th Cir. 2024) (citing Demyanovich, 747 F.3d at 427).[15] The fifth element is the only one in dispute, centering on (1) the sufficiency of

---

[14] An employee must also demonstrate that the employer's adverse action brought them harm. Wallace v. FedEx Corp., 764 F.3d 571, 585 (6th Cir. 2014) (quoting Edgar v. JAC Prods., Inc., 443 F.3d 501, 507 (6th Cir. 2006)). Here, it is undisputed that Defendant suspended Plaintiff without pay and issued a final warning letter. (ECF No. 118-1 at ¶ 50.)

[15] In its motion, Defendant applies the McDonnell Douglas burden shifting framework. (See ECF No. 108 at PageID 1564–68.) Under this approach, after an employee establishes a prima facie case of FMLA interference, the burden shifts to the employer to produce a

the Certification and (2) the communication regarding any deficiencies related to the Certification. (See ECF Nos. 108 at PageID 1564–67 (focusing on the fifth prong); 99-1 at PageID 913–17.) Each is addressed below.

I. **Sufficiency of the Certification**

The parties dispute whether the Certification, which Crestwyn provided on Plaintiff's behalf, was complete and sufficient. (ECF No. 120 at ¶ 23, 127 at ¶ 67.) An employer may require that an FMLA leave request be accompanied by a certification issued by the eligible employee or relative's health care provider. 29 U.S.C. § 2613(a). That certification must be "[c]omplete and sufficient." 29 C.F.R. § 825.305(c); see also 29 U.S.C. § 2613(b) (outlining what criteria make a certification "sufficient"). An incomplete certification is deemed "incomplete." 29 C.F.R. § 825.305(c). Moreover, if a certification is "vague, ambiguous, or non-responsive," then it is "insufficient." See id. Ultimately "it is the employee's responsibility to provide the employer with [a] complete and sufficient certification and failure to do so may result in the denial of FMLA leave." 29 C.F.R. § 825.306(e).

---

legitimate, non-discriminatory reason for the adverse employment action. Demyanovich v. Cadon Plating & Coatings, L.L.C., 747 F.3d 419, 427 (6th Cir. 2014). If the employer provides this explanation, the burden shifts back to the employee to demonstrate that the reason offered for the employer's action was pretextual. Id. In its motion, Defendant argues that Plaintiff's unexcused absences and insufficient communication provided grounds for the suspension and warning letter. (See ECF No. 108 at PageID 1567.)

"But when an employee shows that [her] employer denied [her] FMLA benefits to which [she] was entitled, that is direct evidence of interference, and McDonnell Douglas does not apply." Render v. FCA US, LLC, 53 F.4th 905, 919 (6th Cir. 2022) (internal citations omitted). Because Plaintiff argues that Defendant denied her FMLA benefits that she was entitled to receive (see ECF No. 99-1 at PageID 913–17), her claim is based on direct evidence, and McDonnell Douglas does not apply. Even if it were to apply, because of disputes of material fact as to Plaintiff's proffered prima facie case and Defendant's legitimate, non-discriminatory reasons for the adverse employment action, summary judgment would still be inappropriate.

13

According to its FMLA Policy, Defendant requires that an employee applying for FMLA leave obtain a certification, or "written verification of the employee's health condition from his/her qualified healthcare provider." (ECF No. 99-10 at PageID 1196.) Defendant argues that, on its face, the Certification was missing required information because the "duration and frequency" section was incomplete and the request sought both intermittent and continuous leave. (ECF Nos. 108 at PageID 1565, 118 at PageID 1855.) According to Defendant, neither it nor the Standard could determine if Plaintiff was entitled to the sought-after FMLA leave because of the Certification's shortcomings. (ECF No. 118 at PageID 1856.) Plaintiff argues that she submitted proper certification to the Standard. (ECF No. 99-1 at PageID 904–05.) She also asserts that "frequency" and "duration" could be inferred from other parts of the Certification, for her provider gave an estimated treatment schedule. (ECF No. 120 at ¶ 23.) Plaintiff further disputes Defendant's characterization of the type of leave she sought.

Plaintiff's subjective belief that her paperwork was complete or sufficient for leave processing does not render the Certification proper. It is undisputed that Crestwyn faxed the Certification on Plaintiff's behalf on September 27 and that the Certification included requested leave dates and an estimated treatment schedule. (ECF No. 127 at ¶¶ 66, 68.) The Certification also stated that Plaintiff's condition will cause episodic flare-ups that would periodically interfere with her work and, when those flare-ups occur, it is medically necessary for Plaintiff to be absent. (ECF No. 118-1 at ¶ 68.) However, the section seeking the frequency of the flare-ups and the duration of the related incapacity was left blank. (Id.) This missing language differs from the "frequency and duration" information that was provided in other parts of the Certification, as it would relate specifically to possible episodic issues that would require intermittent leave. With that section blank, the Certification appears incomplete.

14

Defendant also asserts that "[t]he Certification indicated a need for both continuous leave and intermittent leave," making it "ambiguous." (ECF Nos. 108 at PageID 1557, 128 at PageID 2736.) According to Defendant, "[t]he question for 'continuous leave' asks 'Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery?,' to which Plaintiff's medical provider answered 'yes.'" (ECF No. 118 at PageID 1856 n.3.) Plaintiff responds that the Certification neither specified "continuous" nor "intermittent" leave. (ECF No. 119 at PageID 2008–09.) Rather, she asserts that, after receiving the Certification, Defendant was required to provide Plaintiff with a reduced work schedule. (Id.)

The form does not ask a provider to explicitly request continuous leave, intermittent leave, or a reduced work schedule—the three types of leave Defendant recognizes—by name. (See generally ECF Nos. 98-5 at PageID 898–99, 99-5 at PageID 973–74.) Nevertheless, Plaintiff's physician marked that Plaintiff would "be incapacitated for a single continuous period of time," perhaps referencing the part of each workday she would be in treatment. Although the physician provided Plaintiff's estimated treatment schedule, as well as the approximate beginning and end dates for that treatment, she did not specify if Plaintiff could work when she was not in treatment. (See generally ECF Nos. 98-5 at PageID 898–99, 99-5 at PageID 973–74.) Thus, it remains a question of fact if a leave determination, or some aspects of it, could be properly made for Plaintiff, based on the Certification, or if it was too confusing.[16]

---

[16] Defendant also argues that the Certification is incomplete because it "failed to properly indicate the type of leave Plaintiff needed to take, indicating both continuous and intermittent leave." (ECF No. 118 at PageID 1864.) Because the form did not ask Plaintiff's physician to provide that information explicitly, this part of Defendant's argument is suspect.

15

The parties further dispute whether the Certification's shortcomings mattered in evaluating Plaintiff's request for leave. Plaintiff argues that it does not matter what documents the Standard had because she also submitted materials directly to Defendant. (ECF No. 119 at PageID 2012–13.) Defendant responds that, given the improper Certification, whatever additional documentation it had was irrelevant. (ECF No. 128 at PageID 2734–35.)

Defendant's policy undisputedly specifies that "[i]f the employee refuses to return FMLA paperwork and the City has enough information to determine that the leave is taken for a qualify[ing] FMLA reason, the City shall designate the leave as FMLA."[17] (ECF No. 129 at ¶ 9.) However, Plaintiff did not refuse to return FMLA paperwork; rather, her physician provided the Certification on her behalf. Moreover, during his deposition, Snodgrass clarified that the "key [to interpreting this policy] is if the City has enough information to make a certification determination."[18] (ECF No. 98-1 at PageID 790.) Here, the information in Defendant's position suffered the same fatal flaw as the documentation sent to the Standard. Although much of the

---

[17] Defendant argues that, based on the testimony from the Rule 30(b)(6) deposition, this assessment depends on the documentation received by the Standard. (ECF No. 118 at PageID 1861.)

[18] Plaintiff argues that Snodgrass was required to forward the Certification and medical documentation to Defendant's leave coordinator, but he failed to do so, and "[t]his internal COM administrative failure is the likely reason Plaintiff's FMLA request was denied, and also the reason she was suspended without pay and issued a final warning." (ECF No. 99-1 at PageID 912.) Defendant responds that, although Snodgrass had a duty to "ensure [Defendant's leave coordinator] had the proper paperwork," he "did not have a duty to physically forward Plaintiff's medical documentation to the Standard or the leave coordinator." (ECF No. 118 at PageID 1858.)

Regardless, Plaintiff's physician provided the Certification to the Standard itself. (ECF No. 104 at ¶ 22.) Plaintiff never points to documentation that Snodgrass had but the Standard did not have. Moreover, even if Snodgrass was responsible for forwarding the documentation, doing so would not have cured any of the Certification's deficiencies. Snodgrass had the same information as the Standard, including the same blank portion. Therefore, whether Snodgrass had this duty is irrelevant.

16

Certification—which Defendant and the Standard both had—was filled in, the information regarding the "flare-ups" remains unknown, which could help determine the extent of leave Plaintiff needed.

Ultimately, given the Certification's lack of completeness under law and potential ambiguity, the Certification is insufficient.[19]

## II.   Communication Regarding Any Certification Issues

The parties further dispute whether Defendant provided Plaintiff with any notice, let alone adequate notice, of the Certification's deficiencies. Defendant argues that, under the common law "mailbox rule," the Court can presume that Plaintiff received the communication regarding the Certification's shortcomings, as well as the October 5 deadline to submit a properly completed certification. (ECF No. 118 at PageID 1852.) Plaintiff argues that she did not receive this communication prior to the deadline. (ECF No. 99-1 at PageID 905.) She asserts that, even if she had received the September 29 document before October 5, the document specified a deadline to submit a certification, rather than a deadline to correct the Certification already submitted. (ECF No. 119 at PageID 2009.) According to Plaintiff, because the Standard received the Certification from Plaintiff's medical provider on September 27, she complied with the October 5 deadline. (ECF No. 99-1 at PageID 904–05, 909.)

The applicable regulations outline employer responsibility where additional information is needed. "The employer shall advise an employee whenever the employer finds a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient." 29 C.F.R. § 825.305(c). An employer must, if

---

[19] The Certification's insufficiency related to what would have been Plaintiff's "intermittent" leave, but it is unclear that the insufficiency related to the regular hours of the treatment program. The record does not clarify if Plaintiff was out of work because of flare-ups.

possible, provide the employee with seven calendar days to cure a deficiency.  Id.  If the deficiency is not addressed, then the employer can deny the employee's FMLA leave.  Id. "Failure to timely provide a medical certification for which an employer has properly asked will generally preclude an employee's FMLA-interference claim."  Kinds v. Ohio Bell Tel. Co., 724 F.3d 648, 652 (6th Cir. 2013) (citing Frazier v. Honda of Am. Mfg., Inc., 431 F.3d 563, 567 (6th Cir. 2005)).  Moreover, "[an employer's] failure to notify an employee of the specific deficiency in an FMLA medical certification form constitutes interference if it results in the denial of the employee's request for protected leave."  Curlee v. Lewis Bros. Bakeries Inc. of Tenn., No. 3:17-cv-01347, 2019 WL 1470602, at *5 (M.D. Tenn. Apr. 3, 2019) (citation modified).

Both the September 28 and September 29 letters addressed to Plaintiff indicate that she needed to submit documentation by October 5, otherwise her employment status would potentially be at risk.  (ECF No. 99-5 at PageID 980, 990.)  In the September 28 letter, the Standard wrote that the information it had received was "incomplete or insufficient" because it was "missing frequency and duration."  (Id. at PageID 990.)  The letter further instructed Plaintiff to tell her provider to "clarify the sections noted to be incomplete sections."  (Id.) However, the September 29 letter stated that the Standard still needed a certification form and, if Plaintiff thought the form had been sent, she should contact the Standard immediately.  (Id. at PageID 980.)

Plaintiff argues that, even if she had received the letters (she says that she did not), they would not have informed her that the Certification needed to be corrected.  (See ECF No. 119 at PageID 2009–11.)  First, she asserts that the Certification did provide the "frequency and duration," for it advised that from September 8 through October 12, she would be in treatment from 8:00 a.m. until 12:00 p.m.  (Id.)  Plaintiff's confusion demonstrates the sheer lack of clarity

18

in the Standard's communications. Especially given that some "frequency and duration" references were included on the form, the lack of more specifics as to the section that was deficient is critical. Moreover, the September 29 letter stated that the Standard still needed her certification without acknowledging that Plaintiff had submitted a version of it previously, and that a letter from the previous day said as much. (ECF Nos. 129 at ¶ 29, 119 at PageID 2009–11.) That letter did instruct Plaintiff to contact the Standard "immediately" if she believed that the document had been sent. (See ECF No. 99-5 at PageID 980.) However, the letter did not inform Plaintiff of any shortcomings with the Certification that was provided.

Additionally, Snodgrass's September 28 email did not put Plaintiff on notice of any Certification-related deficiencies. (See ECF No. 119 at PageID 2011.) Although Snodgrass instructed Plaintiff to "follow up with Crestwyn and ensure they complete the FMLA paperwork and return it to Standard," he did not tell Plaintiff what, if anything, was deficient. (ECF No. 120 at ¶ 25.) Thus, this email arguably did not properly inform Plaintiff of what was needed to move forward.

Furthermore, whether Plaintiff received communication about an October 5 deadline to submit a properly completed Certification remains in dispute. (See ECF No. 129 at ¶ 29.) Under the mailbox rule, "evidence that an item was properly addressed and placed in the mail creates a rebuttable presumption that the item was received." Telerico v. Nationwide Mut. Fire Ins. Co., 529 F. App'x 729, 732 (6th Cir. 2013) (internal citations omitted). In the Sixth Circuit, "this rebuttable presumption arises upon proof that the document was 'properly addressed, had sufficient postage, and was deposited in the mail.'" Laird v. Norton Healthcare, Inc., 442 F. App'x 194, 198 (6th Cir. 2011) (quoting In re: Yoder Co., 758 F.2d 1114, 1118 (6th Cir. 1985)). Although the Sixth Circuit has not applied the "mailbox rule" to an FMLA interference claim,

19

even if it did apply, Defendant has not pointed to evidence in the record to show that either letter had proper postage or had been deposited in the mail.[20] Without the admissible proof that would "raise a presumption of receipt," the mailbox rule is inappropriate.

Based on the above, the Court finds that there are credibility issues regarding (1) if receiving these communications would have properly informed Plaintiff of the insufficiency of the Certification and (2) if Plaintiff received documents informing her of the October 5 deadline in the first place.  These outstanding questions require resolution by a factfinder.  See 10A Charles Alan Wright et al., Federal Practice and Procedure § 2726 (4th ed.).  If the jury credits Plaintiff's testimony over Defendant's, it could determine that Plaintiff never received effective (or perhaps any) communication that the Certification was incomplete, and an updated version needed to be submitted by October 5.  However, if the jury finds her testimony incredible compared to Defendant's, it could find that Defendant properly notified Plaintiff and she ignored their communications.

Given these outstanding questions of fact, granting either party's summary judgment on Plaintiff's FMLA interference claim is inappropriate.

## CONCLUSION

Because questions of material fact exist as to Plaintiff's claim for FMLA interference, summary judgment for either party is inappropriate.  Therefore, both Motions are **DENIED**.

**IT IS SO ORDERED,** this 3rd day of July, 2025.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

---

[20] The letters were addressed to Plaintiff at an address on file.  During Plaintiff's deposition, she confirmed the address as her daughter's condo, where she had lived.  (ECF No. 97-1 at PageID 646.)